IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| CASSANDRA SIMON, SYDNEY TESTMAN, MIGUEL LUNA, ISABELLA CAMPOS, DANA PATTON, RICHARD FORDING AND THE ALABAMA STATE CONFERENCE OF THE NAACP<br><br>Plaintiffs,<br><br>v.<br><br>KAY IVEY in her official capacity as Governor of Alabama and President Ex-Officio of the University of Alabama Board of Trustees, SCOTT PHELPS in his official capacity as President Pro Tempore, University of Alabama Board of Trustees, MIKE BROCK, KAREN BROOKS, MYLA E. CALHOUN, RONALD GRAY, JEFF GRONBERG, O.B. GRAYSON HALL JR., BARBARA HUMPHREY, W. DAVIS MALONE III, EVELYN VANSANT MAULDIN, HARRIS MORRISSETTE, J. STEVEN ROY, KENNETH SIMON, MARIETTA URQUHART and KENNETH VANDERVOORT in their official capacities as members of the University of Alabama Board of Trustees<br><br>Defendants. | Case No. 2:25-cv-00067-MHH |

## DECLARATION OF MIGUEL LUNA

I, Miguel Luna, hereby declare and state as follows:

    1.    My name is Miguel Luna, and I am over 18 years of age.

2.      I have personal knowledge of the matters set forth herein and, if called to testify, could and would competently do so.

3.      I am from Leeds, Alabama, an eastern suburb of Birmingham. I am currently enrolled as a junior at the University of Alabama at Birmingham ("UAB"). I am majoring in Political Science and History.

4.      I am involved with several student organizations that are committed to advancing racial and social justice.

5.      I currently serve as the president of Esperanza, a group that I co-founded in the spring of 2024. Esperanza was originally founded to provide support for Latine students at UAB and improve their retention rates. In this role, I oversee Esperanza's programming and funding operations, and collaborate with other campus groups to facilitate mentorship, networking, and professional development opportunities for the Latine student community at UAB.

## SB 129's Impact on my Education

6.      I understand that SB 129 subjects university professors to discipline if they "advocate" for a "divisive concept" in their classes. I understand that "divisive concepts" include:

- "That any race, color, religion, sex, ethnicity, or national origin is inherently superior or inferior." SB 129 § 1(2)(a).

- "That individuals should be discriminated against or adversely treated because of their race, color, religion, sex, ethnicity, or national origin." SB 129 § 1(2)(b).

- "That the moral character of an individual is determined by his or her race, color, religion, sex, ethnicity, or national origin." SB 129 § 1(2)(c).

- "That, by virtue of an individual's race, color, religion, sex, ethnicity, or national origin, the individual is inherently racist, sexist, or oppressive, whether consciously or subconsciously." SB 129 § 1(2)(d).

- "That individuals, by virtue of race, color, religion, sex, ethnicity, or national origin, are inherently responsible for actions committed in the past by other members of the same race, color, religion, sex, ethnicity, or national origin." SB 129 § 1(2)(e).

- "That fault, blame, or bias should be assigned to members of a race, color, religion, sex, ethnicity, or national origin, on the basis of race, color, religion, sex, ethnicity,

  or national origin." SB 129 § 1(2)(f).

- "That any individual should accept, acknowledge, affirm, or assent to a sense of guilt, complicity, or a need to apologize on the basis of his or her race, color, religion, sex, ethnicity, or national origin." SB 129 § 1(2)(g).

3

7. "That meritocracy or traits such as a hard work ethic are racist or sexist." SB 129 § 1(2)(h).

8. Restricting what a professor can and cannot teach about a given subject directly interferes with my education. As a political science major, it is critically important for me to learn about structural racism, implicit bias, and White privilege, among other things. These topics may fall within the definition of "divisive concepts" that are prohibited in SB 129. Yet, I understand that SB 129 puts my professors at risk if they, for example, teach that implicit bias impacts law enforcement and our legal system or that political representation is not colorblind, and these teachings are considered to be "divisive concepts."

9. Likewise, my ability to learn is materially hampered if a professor feels compelled to change their curriculum out of fear that teaching about a "divisive concept" will be deemed an attempt to "compel assent" to that concept. For example, in my *Politics and Race in America* course, we studied racial stratification within the United States and how it is influenced by politics. We also discussed the civil rights and political gains that communities of color achieved during the Civil Rights Movement in the mid-twentieth century and explored the relationship between race and political behavior.

10. It is impossible for students to understand the role of race in American politics without understanding systemic racism and unconscious bias. If professors

4

feel that they cannot teach about the role of White supremacy in the violence and racial terror inflicted upon Black Americans as they sought to gain the right to vote because these professors fear that some in the class might feel a sense of guilt or responsibility (divisive concepts e and f), then they cannot fully educate students about modern electoral politics.

11.     I have already witnessed the impacts of SB 129 on my professors and my classes. Last semester, I took a course titled *Human Rights*. The professor added language to the syllabus that read: "Note on Academic Freedom: All University faculty, instructors and teaching staff have the academic freedom to explore, discuss, and provide instruction on a wide range of topics in an academic setting. This class may present difficult, objectionable, or controversial topics for consideration, but will do so through an objective, scholarly lens designed to encourage critical thinking. Though students may be asked to share their personal views in the academic setting, no student will ever be required to assent or agree with any concept considered 'divisive' under Alabama law, nor penalized for refusing to support or endorse such a concept. All students are strongly encouraged to think independently and analytically about all material presented in class and may express their views in a time, place, and manner, consistent with class organization and structure, and in accordance with the University's commitment to free and open thought, inquiry, and expressions." During my class on *Human Rights*, I observed my professor speak

very timidly about topics that could possibly fall under SB 129. For example, he seemed wary of how he presented course materials to students about human rights violations experienced by incarcerated African American in the Alabama prison system.

12. I currently am enrolled in a course called *Environmental Politics*. The course is taught by the same professor who taught the *Human Rights* course. Again, this professor included the same language in the *Environmental Politics* syllabus that had been in the *Human Rights* syllabus last semester.

13. The *Environmental Politics* course covers contemporary and historical environmental issues in domestic and foreign politics. I chose to enroll in this course because I am interested in learning more about environmental policymaking, as well as the growing environmental justice movement.

14. I fear that SB 129 will lead my *Environmental Politics* professor to avoid topics that are central to the course, such as the impact of characteristics like race, class, and gender on the development and implementation of environmental policies, for fear that they would be considered "divisive concepts" under SB 129. I am also worried that my professor will shy away from discussions about how systemic inequalities impact environmental conditions, such as access to clean water and exposure to air pollution, due to a concern that they are deemed "divisive concepts" under SB 129. For example, one of the central issues in the modern

environmental justice movement is the placement of hazardous waste and toxic chemical sites in communities of color. Due to SB 129's prohibitions, I fear my professor may not be able to provide all the information about this issue that they have in past versions of the course prior to SB 129's implementation and might water down their views about the role of race in this issue.

15. I plan to enroll in additional courses on race and gender throughout the duration of my studies at UAB, because they help me contextualize my own experiences, and I am interested in learning from perspectives that have historically been underrepresented. Yet, my ability to learn to think critically about issues pertaining to race and gender inequality through honest, uncensored instructions is impeded if a professor is limited on how they can teach about these issues due to fear of discipline or termination for possibly teaching a prohibited "divisive concept."

16. Limitations on the information I can receive and discuss in my college classes affect my future career, in addition to my education. As a Political Science and History double major, learning about how past events influence contemporary policies and political behavior is critical for my professional development. However, if my professors feel compelled to limit conversations about race and gender and how they relate to the political system due to SB 129, I will be denied instruction that would have helped me become a more informed and effective policymaker.

**SB 129's Impact on Student Organizations**

17. After Governor Ivey signed Senate Bill 129, I became deeply concerned about the bill's impact on Esperanza's ability to fulfill its mission of supporting Latine UAB students.

18. Since its founding, Esperanza has relied heavily on funding from the UAB office formerly known as the Office of Diversity, Equity and Inclusion. I understand that this office was closed to comply with SB 129.

19. I also understand that multiple student organizations throughout the University of Alabama system have lost funding as a direct result of SB 129.

20. I am concerned that Esperanza, due to its focus on issues pertinent to Latine students, will be deemed a "diversity, equity and inclusion program" that is barred from University funding under SB 129. The language of SB 129 is vague, confusing, and unhelpful in determining Esperanza's status. It defines a "diversity, equity and inclusion program" as: "Any program, class, training, seminar, or other event where attendance is based on an individual's race, sex, gender identity, ethnicity, national origin, or sexual orientation, or that otherwise violates this act." While Esperanza membership is open to all UAB students regardless of race or ethnicity, its members are primarily Latine, and its stated focus is on issues of importance to Latine students.

21. In addition, UAB school officials informed me that if Esperanza applies

for funding for an event that is deemed to be related to a "divisive concept" under SB 129, that funding will be denied. Once again, I cannot determine what would and would not violate SB 129 and thus what funding Esperanza remains eligible for. For example, if Esparanza held a program focused on implicit bias in hiring or on White privilege, the topic might be considered a "divisive concept" under SB 129.

22.   SB 129 also has impacted, and continues to impact, Esperanza's funding sources by withdrawing funding from other organizations at UAB that, in turn, would normally provide funding to Esperanza. For example, Esperanza has received financial support from the Social Justice Advocacy Council ("SJAC") at UAB. SJAC, however, lost its dedicated funding from the University as a result of SB 129.

23.   Without access to funding resources from the University, whether directly or through other organizations like SJAC, Esperanza is unable to provide the programming, opportunities, and resources that it offered to Latine students before SB 129 went into effect. For example, Esperanza wanted to host a panel event for Latine pre-law students, with a particular focus on underrepresented communities. That event may not be possible without the financial support we would have had before SB 129 went into effect.

24.   Esperanza also would like to host events on how to leverage Latine racial diversity, Spanish language skills, and navigate anti-Latine discrimination in

the workplace. Not being able to receive financial support from UAB means we possibly could not provide food or refreshments to attendees, or water to attendees and panelists at events, and would be significantly disadvantaged in attracting high-quality guest speakers through even modest honorariums.

25. SB 129's impacts on Esperanza cause me direct harm as an individual. Without Esperanza's access to funding in question, I am deprived of the opportunity to network and associate with other students on issues of importance to the Latine community and to participate in programming about the Latine community. This severely restricts my ability to express my viewpoints about Latine individuals and my community at UAB.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and accurate.

Executed on January 29, 2025.

_____
Miguel Luna