# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| CASSANDRA SIMON, SYDNEY TESTMAN, MIGUEL LUNA, ISABELLA CAMPOS, DANA PATTON, RICHARD FORDING AND THE ALABAMA STATE CONFERENCE OF THE NAACP<br><br>Plaintiffs,<br><br>v.<br><br>KAY IVEY in her official capacity as Governor of Alabama and President Ex-Officio of the University of Alabama Board of Trustees, SCOTT PHELPS in his official capacity as President Pro Tempore, University of Alabama Board of Trustees, MIKE BROCK, KAREN BROOKS, MYLA E. CALHOUN, RONALD GRAY, JEFF GRONBERG, O.B. GRAYSON HALL JR., BARBARA HUMPHREY, W. DAVIS MALONE III, EVELYN VANSANT MAULDIN, HARRIS MORRISSETTE, J. STEVEN ROY, KENNETH SIMON, MARIETTA URQUHART and KENNETH VANDERVOORT in their official capacities as members of the University of Alabama Board of Trustees<br><br>Defendants. | Case No. 2:25-cv-00067-MHH |

## DECLARATION OF SYDNEY TESTMAN

I, Sydney Testman, hereby declare and state as follows:

1. I am over 18 years of age and identify as a Black woman.

2. I have personal knowledge of the following facts and, if called to testify, could and would competently do so.

3. I am currently enrolled as a junior at the University of Alabama at Birmingham ("UAB"). I am majoring in Political Science and also pursuing a Master of Public Administration degree.

4. I currently serve in leadership roles in various UAB campus organizations. I am the Executive Vice President of the Undergraduate Student Government Association and the treasurer of the Iota Phi Chapter of Alpha Kappa Alpha Sorority.

5. I have worked with multiple groups on UAB's campus to advocate for racial and social justice. I previously served as the finance coordinator of the Social Justice Advocacy Council (SJAC). "The objective of the Social Justice Advocacy Council is to celebrate diversity of identity, broaden cultural understanding, encourage unity, empower marginalized and underrepresented groups, educate about identity related issues, and promote intercultural interactions between all communities of people at UAB."[1]

---

[1] *Social Justice Advocacy Council*, Univ. Ala. at Birmingham Calendar, https://calendar.uab.edu/group/social_justice_advocacy_council (last visited January 28, 2025).

6. SJAC hosted their own programming and also helped to fund other student groups on UAB's campus. In the role of SJAC's finance coordinator, I reviewed funding applications from UAB student groups and distributed between $7,000 and $8,000 per year among these groups to support social justice programming on UAB's campus.

7. SB 129 was introduced in the Alabama legislature on February 20, 2024. Upon reading the text of SB 129, I was worried about its potential negative impact on campus programs at UAB and student groups that are committed to supporting and uplifting UAB students with marginalized identities.

8. My concerns about SB 129 proved accurate. After SB 129 went into effect, it negatively impacted student group funding at UAB. Last year, SJAC provided funding for a multitude of student-led events, including the Indian Cultural Association's Diwali event, the Spanish and Latino Association's Day of the Dead event, and a volleyball game hosted by the Korean Student Association. SJAC typically has a budget of around $10,000 per year. This year, SJAC did not receive any university funding, and is unable to provide financial support for campus events because the university demoted SJAC from a University Funded Organization ("UFO") to a Registered Student Organization ("RSO") to comply with SB 129. UAB officials told me that, because of SB 129, SJAC could not continue receiving state funding because it may be connected to

"divisive concepts" or fall under SB 129's definition of a "diversity, equity and inclusion program."

9. UFOs have specific budget allocations that RSOs do not. As a UFO, SJAC was able to host its own events using state funds and to provide funding to RSOs who put on programming involving social justice. Now that SJAC is an RSO, it can no longer receive state funding to host its own events and conferences.

10. In addition, when SJAC lost its funding due to SB 129, I also lost a $600 stipend that I had previously received for my work as a finance coordinator. With my stipend gone from SJAC, I had to regroup and figure out how I was going to come up with that $600 for school and had to pursue additional employment to continue to finance my education.

11. Due to SB 129, SJAC is unable to fulfill its mission to support students from underrepresented backgrounds and provide a platform for groups that otherwise would not have the funding to engage with members of the UAB campus community.

12. SJAC's primary purpose is to further social justice programming to benefit UAB students who have been historically excluded from or underserved by the university, including for reasons arising from race- or gender-based discrimination. While SB 129 caused SJAC to lose its university funding, the

law did not affect certain other student groups' funding because they have no risk of falling within the definition of "diversity, equity and inclusion programs" or being associated with "divisive concepts."

13. By limiting the events that affinity groups can host on campus, SB 129 also limits my representation in the UAB campus community. UAB has interpreted SB 129 to ban university funding for groups that are committed to promoting and preserving Black culture on campus, such as the Black Student Awareness Committee ("BSAC"). The withholding of state financial support from these groups limits their ability to support Black students at UAB and facilitates the erasure of Black history and perspectives on UAB's campus. For example, the demotion of BSAC to an RSO meant that Black students lost a scholarship facilitated by BSAC, the Camille Armstrong scholarship, which helped fund the studies of three Black students on campus each year. I am not a scholarship recipient, but it was an important source of funding for many of my Black peers on campus.

14. Additionally, because of the vagueness and ambiguity of key terms in SB 129, it is not clear to me what student organizations can or cannot say or do without violating the law. For example, I understand that the university considered SJAC to be a "diversity, equity and inclusion program," which SB 129 defines as "[a]ny program, class, training, seminar, or other event where attendance is

based on an individual's race, sex, gender identity, ethnicity, national origin, or sexual orientation, or that otherwise violates this act." However, it is not clear to me how SJAC meets this definition because, although SJAC focuses on marginalized communities, its membership is open to everyone.

15. Moreover, the UAB administration stated that it will not provide any state funding for programs or events associated with a "divisive concept." But I cannot determine from the text of SB 129 what would constitute a "divisive concept." For example, if SJAC sponsored an event focused on racism on campus and had a speaker who addressed problems of implicit bias or White privilege, the program may be considered to be associated with a prohibited "divisive concept" even though the words "implicit bias" and "White privilege" are not found in SB 129's text.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and accurate.

Executed on January 29, 2025.

*Sydney Testman*
Sydney Testman