# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| CASSANDRA SIMON, SYDNEY TESTMAN, MIGUEL LUNA, ISABELLA CAMPOS, DANA PATTON, RICHARD FORDING AND THE ALABAMA STATE CONFERENCE OF THE NAACP<br><br>Plaintiffs,<br><br>v.<br><br>KAY IVEY in her official capacity as Governor of Alabama and President Ex-Officio of the University of Alabama Board of Trustees, SCOTT PHELPS in his official capacity as President Pro Tempore, University of Alabama Board of Trustees, MIKE BROCK, KAREN BROOKS, MYLA E. CALHOUN, RONALD GRAY, JEFF GRONBERG, O.B. GRAYSON HALL JR., BARBARA HUMPHREY, W. DAVIS MALONE III, EVELYN VANSANT MAULDIN, HARRIS MORRISSETTE, J. STEVEN ROY, KENNETH SIMON, MARIETTA URQUHART and KENNETH VANDERVOORT in their official capacities as members of the University of Alabama Board of Trustees<br><br>Defendants. | Case No. 2:25-cv-00067-MHH |

## DECLARATION OF BERNARD SIMELTON

I, Bernard Simelton, hereby declare and state as follows:

1. I currently serve as the President of the Alabama State Conference of the NAACP ("Alabama NAACP"), and I have personal knowledge of the matters set forth herein.

2. The Alabama NAACP was founded in 1913 by faculty, staff, and local residents associated with Talladega College in Talladega, Alabama. Since its founding, the Alabama NAACP has been a leading advocate for political, legal, and civil rights of Black Alabamians.

3. The Alabama NAACP's mission is to achieve equity, political rights, and social inclusion by advancing policies and practices that expand human and civil rights, eliminate discrimination, and accelerate the well-being, education, and economic security of Black people and all persons of color. Our membership is open to all races.

4. I have served as the President of the Alabama NAACP since October 2009. I was elected to the NAACP National Board of Directors in February 2018.

5. After reading the text of Senate Bill 129 ("SB 129"), I, along with many of the Alabama NAACP's members, became deeply concerned about the law's impact on the organization's ability to fulfill its mission by promoting messages of racial justice, inclusive education, and the teaching of a fair and accurate history in Alabama.

6. After Governor Ivey signed SB 129, the Alabama NAACP issued a statement strongly condemning the law and highlighting the law's potential negative impacts on education. *See* Exhibit B.

7. SB 129 has caused harm to Alabama NAACP's members and to Alabama NAACP itself.

8. The Alabama NAACP has chapters at various universities throughout the state. One such chapter is the University of Alabama Chapter of the National Association for the Advancement of Colored People ("UA NAACP Chapter"). The UA NAACP Chapter presently has approximately forty-five members, comprised of students at the University of Alabama in Tuscaloosa, Alabama.

9. As stated in the UA NAACP Chapter's constitution, its purpose is to "improve the political, educational, social and economic status of minority groups; to eliminate racial prejudice; to eliminate discriminatory acts of injustice; to keep the public aware of the adverse effects of racial discrimination; and to take all lawful action to secure its elimination . . . ."

10. Among other things, the UA NAACP Chapter operates a "speakers bureau" that arranges for on-campus speakers to come to the University of Alabama. The UA NAACP Chapter has hosted various events that could be considered violations of a "divisive concept" that is prohibited in SB 129 and plans to hold similar events in the future. For example, in October 2024, the UA NAACP Chapter

3

hosted a speaker from Black Voters Matter and plans on inviting speakers later this spring to talk to its members about bills impacting Black communities in Alabama's 2025 legislative session, as well as the impact of racial gerrymandering in redistricting. Without university funding, it would be difficult for the UA NAACP to host events and provide programming for its membership. It would also be difficult to attract guest speakers to campus since we would not be able to offer honorariums.

      11.    SB 129 provides that an institution of higher education may not "[s]ponsor any diversity, equity, and inclusion program or maintain any office, physical location, or department that promotes diversity, equity, and inclusion programs." SB 129 § 2(1). The law defines a "diversity, equity and inclusion program" as "[a]ny program, class, training, seminar, or other event where attendance is based on an individual's race, sex, gender identity, ethnicity, national origin, or sexual orientation, or that otherwise violates this act." SB 129 § 1(3).

      12.    I understand that, as a result of SB 129, the University of Alabama closed office space that had been previously available to the Black Student Union ("BSU") and the Safe Zone Resource Center ("Safe Zone"). The reason given for the closures was that the university office space devoted to those student organizations violated SB 129. The University of Alabama then converted the BSU offices into a food pantry, and the Safe Zone into general office spaces.

13. The BSU's mission is "to establish and innovate relationship opportunities and experiences for minority students at the University of Alabama. We also serve as a liaison between the minority student body and administration in efforts to uphold the values stated in the Capstone Creed. We serve our members by providing community service opportunities, mentoring relationships within BSU, and providing outlets for expression and discussion. We strive to address the issues that affect our community on campus, locally, and internationally. Our goal is to provide a safe and welcoming environment for all students who wish to be a part of it." [1]

14. Prior to its closure, the BSU held a variety of student programming, including educational programs, social events, and charitable fundraisers. The BSU does not limit participation in its events to a particular race although it focuses on the needs of Black students in the University of Alabama. The BSU also does not limit its membership to a particular race.

15. The Safe Zone "promotes equity and inclusion for LGBTQIA+ individuals at The University of Alabama. The Center provides educational outreach, community support and crisis intervention resources for LGBTQIA+

---

[1] The University of Alabama Black Student Union, My SOURCE, https://mysource.ua.edu/organization/uabsu (last visited Jan. 28, 2025).

members of The University of Alabama community and their allies."[2] Safe Zone does not limit participation in its programming to LGBTQIA+ individuals or its membership to only LGBTQIA+ students.

16. Prior to the closure of the BSU and Safe Zone offices, members of the UA NAACP Chapter attended events and spent time in the BSU and Safe Zone spaces. Our membership was able to receive connections with other students related to their identities, network and receive space to hold meetings. Due to the closure of the BSU and Safe Zone spaces, members of the UA NAACP Chapter have suffered—and continue to suffer—harm as a direct result of SB 129 because these spaces have been closed.

17. I am also deeply concerned that the UA NAACP Chapter will be ineligible for university funding or university space on campus in light of the University of Alabama's decision to deny office space to the BSU and Safe Zone in compliance with SB 129. I am also deeply concerned that the loss of campus space will leave Black students and Black LGBTQIA+ students without places to congregate, network and organize affinity-related events. If the BSU and Safe Zone are considered prohibited "diversity, equity and inclusion programs" in violation of SB 129, there is a real risk that the UA NAACP Chapter will be similarly labeled

---

[2] The University of Alabama Safe Zone Resource Center, Alabama LGBTQ+, www.alabamasafezone.com/archiveszrc (last visited Jan. 28, 2025).

and will be similarly denied university funding or office space on campus. While the UA NAACP Chapter does not limit membership to members of a particular race, its mission is focused on Black students and its membership is comprised primarily of Black students.

18. In addition, Alabama NAACP and its UA NAACP Chapter regularly address issues concerning structural racism—including implicit bias, White privilege, and the use of terms like "meritocracy" to justify ongoing discrimination and exclusion—that may be considered prohibited "divisive concepts" under SB 129, including under "divisive concepts" as defined in sections 2(b), 2(c), 2(d), 2(e), 2(f), 2(g), and 2(h). It would be impossible for the UA NAACP to avoid these issues in order to receive eligibility for university funding.

19. SB 129's prohibitions are vague, confusing, and difficult to understand. Thus, the Alabama NAACP is unable to determine whether its UA NAACP Chapter constitutes a "diversity, equity and inclusion program" as that term is defined in SB 129 and whether it is eligible for university funding and space. For example, it is unclear to me whether the Alabama NAACP and the UA NAACP Chapter—or events that we put on—would constitute "[a]ny program, class, training, seminar, or other event where attendance is based on an individual's race, sex, gender identity, ethnicity, national origin, or sexual orientation."

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and accurate.

Executed on January 28, 2025.

*Bernard Simelton*

_____

President Bernard Simelton