```
               UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ALABAMA
                     SOUTHERN DIVISION


CASSANDRA SIMON, et al.,    *

          Plaintiffs,       *     2:25-cv-00067-MHH

     vs.                    *     February 13, 2025
                                    11:00 a.m.
KAY IVEY, et al.,           *
                                  Birmingham, Alabama
          Defendants.       *


* * * * * * * * * * * * * * * * * * * * * * * * *

         TRANSCRIPT OF VIDEO TELECONFERENCE
   BEFORE THE HONORABLE MADELINE HUGHES HAIKALA
            UNITED STATES DISTRICT JUDGE

* * * * * * * * * * * * * * * * * * * * * * * * *


For the Plaintiffs:    Antonio L. Ingram, II
                       Alison Nicole Mollman
                       Carmen Lo
                       Daniel Cantor


For Defendant          Alexander Barrett Bowdre
Ivey:                  George Muirhead


For the University     Jay M. Ezelle
Board of Trustees:     Samuel Arthur Cochran


Court Reporter:        Leah S. Turner, RMR, CRR
                       Federal Official Court Reporter
```

This cause came to be heard and was heard on the 13th day of February 2025, before the Honorable Madeline Hughes Haikala, United States District Judge, holding court for United States District Court, Northern District of Alabama, Southern Division, in Birmingham, Alabama.

Proceedings continued as follows:

P R O C E E D I N G S

THE COURT: Good morning, everyone. I hope y'all are well today. I understand that we have had some technical difficulties, so I appreciate everyone's patience.

We are here today in case 25-67. This is the Simon versus Governor Ivey case.

The Court had a telephone conversation with the parties last week, and the Court understands that the parties have an interest in discussing the matters that the Court raised a little bit more, so let me turn this over to you all and hear what you would like the Court to be made aware of, please.

MR. EZELLE: Judge, this is Jay Ezelle on behalf of the Board of Trustee defendants.

I want to be cautious in terms of exactly how I say this because you set forth a process at our last conference, which we attempted to follow. After learning of your relationship and then going to the parties to determine if they had any concerns about that relationship and then reporting that back to Ms. Clark, your courtroom deputy, we did that.

1    Mr. Ingram, on the other hand, sent an email to
2 chambers, which I understand from Ms. Clark went to everyone
3 in chambers in terms of their email addresses.  And so in the
4 email communication with Ms. Clark, we had attempted to see if
5 we could direct that back to her, but she explained that it
6 had gone to everyone in chambers.
7    So we're now in a situation where -- and I'm sure
8 what Mr. Ingram did was wholly unintentional, but we have sort
9 of gone outside the process you set forth for us to follow,
10 and the confidentiality of that process, I think, has been
11 broken, and that's obviously extremely concerning to us on
12 behalf of our clients, and because there was a process set
13 forth to relay that to Ms. Clark and how that process really
14 has been bypassed and I think raises concerns.
15    We did not specifically request this hearing or this
16 status conference over it, but that's what we raised in the
17 email to Ms. Clark about sort of us following through with
18 your instructions and trying to sort of undo the notice from
19 the plaintiffs.
20    THE COURT:  You all, hold on for just a moment.  I
21 wanted to look something up on the computer and I forgot to
22 bring my phone in to do the security work I need to do to get
23 on the computer.  I will be right back.
24    (Brief recess.)
25    THE COURT:  Okay.  I just I wanted to look at our

web page. The Northern District of Alabama has an informational page for each of the judges. I looked on there to see if there was information on there about how to contact Ms. Clark, and there isn't, so I thought it would be helpful to know what our web page says on that.

With respect to your remarks, Mr. Ezelle, when Ms. Clark told you that the information, the messages in the chambers in-box are available to everyone in chambers, that is an accurate statement.

Some days I look at the chambers in-box to see what mail we have received. Some days I don't look at all. And I had not seen any email related to this case in the chambers in-box. So I just offer that as information.

All right. Does anyone else want to speak?

MR. INGRAM: Yes, I would like to speak, Your Honor. Insofar as there is a request for recusal from you presiding on this matter by the Board of Trustees, we would like an opportunity to submit briefing. We believe the case law does not permit or support recusal under these circumstances.

In addition, given that we represent the plaintiffs and therefore the only party that could be prejudiced by any perceived bias, which our clients do not believe to be the case, we think recusal is also inappropriate in the factual pattern.

MR. EZELLE: Judge Haikala, if I may just respond to

that. I don't want to jump in if you have other questions to ask, but I would like a chance to respond to that.

      THE COURT: You may.

      MR. EZELLE: I think what Mr. Ingram is saying in terms of having full briefing on a motion for recusal, you know, goes against everything that has happened since we had the status conference last week, and I think it puts my clients in a significant disadvantage here, because what you raised, at least as I understood it from the status conference, was this concern, and we certainly appreciate you raising the concern, certainly understood it, and as I said to you on the last status conference, I did not see that as something that I viewed as a basis for recusal.

      This is a case that's going to be decided by a legal issue and then probably head down the road to Atlanta from there. And so even if it weren't, this is not the kind of case that we would be arguing about a recusal issue. But in terms of what we were instructed to do at the status conference was not go follow the recusal standard set forth in Section 455, but rather go ask our clients individually whether they subjectively had a concern about that relationship, which is what we did; frankly, what we were in the process of doing, and to do that by the close of business Monday. So we were trying to get that done.

      Mr. Ingram on Monday morning sends that message to

Ms. Clark. He had Ms. Clark's email address because that had been sent out from the prior status conference, and sort of bypassed the system. So we had to immediately stop the entire process that we were doing to inform Ms. Clark at least of what we knew at that stage and that was that one of the members of the Board of Trustees did have a subjective concern about that relationship, and it was not -- it was more of an issue of this was such a highly charged political issue at the time it came out that the concern was could this have been discussed, you know, could that be something that becomes an evidentiary issue.

And so had we even went through the analysis of whether that would satisfy the objective test under Section 455, but that's not what we were asked to do. We were asked to question our clients whether they had a subjective concern about it, which is exactly what we did.

And, frankly, because Mr. Ingram jumped the gun, we didn't even have time to fully consult on our end in terms because we had to try to remedy the problem as we understood it, and I appreciate what Your Honor said that you had not actually received the email Mr. Ingram sent, but we knew it had gone to chambers and we knew it had been widely distributed, and so we were then forced into the position of trying to sort of midstream send our notice in, in an attempt to make sure that this notice was not more broadly

1  distributed.
2      So I think now that the parties have to go brief
3  this under a Section 455 standard is inconsistent with the
4  instructions we got last week and the process we followed and
5  I think puts my clients at a complete disadvantage in this
6  process because we followed the instructions and because
7  Mr. Ingram did not, we are now faced with going through a
8  recusal motion that -- you know, that was not how this process
9  was started.
10      And so I think that would be -- I just don't see how
11 we could go from the process that the Court initiated last
12 week to a new process where we're following the Section 455
13 standard based on what has happened in the intervening time.
14      THE COURT: Let me hear from Mr. Bowdre, please, if
15 he has anything to say.
16      Mr. BOWDRE: Your Honor, the Governor takes no
17 position on this.
18      THE COURT: All right. Mr. Ezelle, let me respond
19 to a couple of your remarks.
20      First of all, as I recall our conversation last
21 week, I expressed that I was not concerned. I told you all
22 that I was disclosing the information because I thought it was
23 the right thing to do to let everybody know about the
24 relationship. I said that I did not believe that under the
25 judicial canons there was a reason to recuse.

1     I made the point that my understanding of this
2 lawsuit is that it is a challenge to the constitutionality of
3 an enactment by the Alabama legislature.  I understand that
4 the defendants are all sued in their official capacity.  And I
5 explained that I didn't think there was a problem under the
6 judicial canons, but that I wanted to make everyone aware of
7 the relationship.
8     In any case in which a lawyer from my old firm
9 appears, for example, I have no duty under the ethical canons
10 to recuse from those cases, but in every case in which a
11 Lightfoot lawyer appears, I -- and actually I realized, as I
12 was thinking about this, that I do that in all of the civil
13 cases that I have, and I actually had a Lightfoot lawyer
14 appear in a criminal case this week and I forgot to do it for
15 that case, and I need to double back and do it because it's my
16 routine practice.
17     If I had had a conversation with anybody who is a
18 party to this case or with anyone related to them about the
19 legal issues in this case, you would have heard that in our
20 conversation last week.  I acted out of an abundance of
21 caution because I never want to get down the road with parties
22 in a case and have somebody flag something that could upset
23 all of the time and effort that the parties have invested.
24     So I always feel like it's best to get everything
25 out on the table at the front end so that if there is a

concern, even if there isn't a reason under the ethical canons to address something, I give everybody the information and can address any concerns the parties raise.

And so that's what I intended to do last week. I hope I communicated that well.

What I didn't communicate as clearly as I should have -- you know, I could have said specifically here's the email address to use to communicate with Ms. Clark, and that would have alleviated, perhaps, the issues that we're discussing today.

I did say that -- I gave the parties until the close of business Monday because I acknowledged in the call that there were lots of people who needed to be contacted, and I said I was trying to balance fairness to everybody who needed to reach out to clients, and I did say that I didn't think it was appropriate to make a decision in our call last week because I thought you all would want to speak to your clients.

And so I said I was trying to balance the number of people who needed to be contacted against the need to get this case moving, and so I set the close of business Monday as a deadline. I didn't say everybody has to wait until the close of business Monday to notify the Court.

In fact, Mr. Ingram had said he thought he could have an answer by the close of business the day after the telephone call. And if he had responded then, that would have

1  been a completely appropriate time to respond because the
2  Court didn't say to the parties you may only respond by the
3  close of business Monday.
4      I understand the concerns that you're identifying,
5  Mr. Ezelle, so I'm not trying to in any way belittle the
6  concern that you're expressing.  But I don't know that I agree
7  with everything you said in terms of the characterization of
8  our last telephone call, and so the record will speak for
9  itself.  But that's my memory.
10     And I hope the context of understanding that this is
11 a process that the Court routinely uses is helpful.
12     I'm going to give this some thought and decide
13 whether to order briefing.  I appreciate the conversation
14 today.  Is there anything else anyone else would like to say
15 right now?
16     MR. EZELLE:  Judge, the only thing I would respond,
17 in terms of what you said, I'm not criticizing Mr. Ingram at
18 all for submitting his position early.  It's just the fact
19 that he didn't submit it to Ms. Clark and it went in to
20 chambers that forced us to then respond and put us in the
21 terrible position of having to disclose and now directly to
22 you that a member of the Board of Trustees had a subjective
23 concern over that.
24     And I think had he followed the process as you
25 instructed, we would not have been in that situation.  And I

1  do think that that would not be something -- if the
2  instructions had been -- and it may very well, Judge -- I'll
3  own the fact that maybe what I did is I didn't write my notes
4  down correctly in terms of what I was supposed to do.  That's
5  entirely possible.  And if so, then it's my fault and I will
6  certainly own that.
7         But what I took away from that last discussion was
8  that I was supposed to go talk to each one of my clients,
9  disclose to them what you had disclosed to us, and then report
10 back whether any of them had a concern about that
11 relationship, and that we were going to do it in this
12 confidential process; and it was going to Ms. Clark because
13 the party that had that concern wouldn't be identified.
14 Otherwise, you would have instructed us to consider that and
15 if we had concerns with that, we could file a motion for
16 recusal based on the regular Section 455 test.
17        And now because of that and what we thought we were
18 doing in following your instructions at least, we are in the
19 position of, I think, being placed in an unfair position
20 because of it.  But you understand our position.
21        THE COURT:  I do.  And I understand the concern that
22 you've expressed.  I don't think you did anything wrong,
23 Mr. Ezelle.  I think you did what the Court asked the parties
24 to do.
25        I will say this.  The Court anticipated that if

somebody had a concern, it would be more likely to be the plaintiffs because if there would be any sort of concern about bias, it would likely be for the plaintiffs.  And the Court understood that if a concern was expressed by someone other than the plaintiffs, that there might be an issue that we would need to discuss after the parties alerted the Court.

The Court also understood that the lawyers had all said that they didn't see an issue, that that was the very reason why the Court wanted the lawyers to have the opportunity to talk with their clients to make sure that there wasn't anything that their clients would want to identify.

Again, I will think about this and decide what the best next step is.  I appreciate everyone's time today, and we will get back to you all as quickly as possible.  Thank you.

(End of proceedings.)

C E R T I F I C A T I O N

I hereby certify that the foregoing transcript in the above-styled cause is true and accurate.

*[Signature: Leah S. Turner]*

**Leah S. Turner, RMR, CRR**
**Federal Official Court Reporter**